UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHARLOTTE RENEE BOUNDS | * | CIVIL ACTION NO. 18-4315 |
| | * | |
| | * | DIVISION: 1 |
| VERSUS | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| TEXTRON, INC., ET AL. | * | |
| | * | |

## ORDER AND REASONS

Before the Court is the Rule 4(m) Motion to Dismiss filed by defendants Textron Systems Marine & Land Systems, a division of Textron, Inc. ("Textron"), and Gordon Scott. (Rec. Doc. 28). For the following reasons, the Motion is GRANTED.

### Background

This is an employment discrimination lawsuit. Plaintiff Charlotte Renee Bounds is a tig and mig aluminum welder who began working for Textron in April 2017. She alleges that she was subjected to unwanted sexual harassment by senior welder Gordon Scott and other employees. For example, she says Mr. Scott asked her inappropriate questions about her sexuality, took a picture of her rear end while she was bending over welding, followed her around, and gave her inappropriate hand gestures. Ms. Bounds alleges that she reported these incidents through all channels at Textron. Following her complaints, she alleges she was subjected to a hostile work environment including negative performance evaluations, unwarranted criticisms regarding her job performance, being forced to work in close proximity to Mr. Scott, having her gas line disconnected by co-workers on the upper deck while she was welding in the bottom of the boat, and having her air bag manipulated by co-workers while she was welding. On November 16, 2017, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC"). A Notice of Right to Sue was issued on March 8, 2018. Ms. Bounds filed this lawsuit on April 26, 2018.

Pursuant to the Federal Rules of Civil Procedure, Ms. Bounds was required to complete service on the defendants by July 25, 2018, but she failed to do so. On July 31, 2018, more than 90 days after the filing of the lawsuit, this case was set for the court's call docket and Ms. Bounds was ordered to appear and explain why her lawsuit should not be dismissed for failure to timely effect service. The order provided that if service was completed by August 28, 2018, the order would be satisfied, and no appearance would be necessary. Nothing was filed in the record by that date. And neither Ms. Bounds nor her counsel appeared as ordered on August 29, 2018. The court reset the matter for its September 26, 2018, call docket, and again neither Ms. Bounds nor her counsel appeared, nor was evidence of service entered into the record by that date.

On that same day, Ms. Bounds' counsel, Julie Knight, filed a motion for extension of time to perpetuate service. Ms. Knight represented that she had been trying to obtain a waiver of service from the defendants for the preceding 60 days. She asserted that she had communicated and emailed a copy of the complaint and a waiver of service to Textron's in-house counsel and was under the belief that waiver would be provided. She explained that she had missed the September 26, 2018, docket call due to an illness. The court granted Ms. Bounds' motion and allowed Ms. Bounds until October 12, 2018, to complete service.

On October 11, 2018, Ms. Bounds filed evidence of service on Textron into the record. Ms. Bounds requested additional time to serve Mr. Scott, explaining that the process server had not been able to locate him. The court granted the extension, and Ms. Bounds filed evidence of service on Mr. Scott into the record on November 5, 2018. Textron and Mr. Scott have jointly filed the present motion to dismiss on the grounds that Ms. Bounds failed to serve them within the time

period required by Federal Rule of Civil Procedure 4(m). The parties consented to proceed before the Magistrate Judge and the matter was referred to the undersigned on December 17, 2018.

Law and Analysis

1. *Standard for Dismissal under Rule 4(m)*

"If a defendant is not served within 90 days after the complaint is filed," Federal Rule of Civil Procedure 4(m) provides that the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. Proc. 4(m). The "good cause" standard for extensions has been described as requiring:

> *at least* as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking an enlargement *and* some reasonable basis for noncompliance within the time specified" is normally required.

Winters v. Teledyne Movible Offshore, Inc., 776 F.2d 1304, 1306 (5th Cir. 1985) (quoting 10 Wright & Miller, *Federal Practice and Procedure: Civil* § 1165) (emphasis in original). For example, in Winters, the plaintiffs had not yet served the defendant more than 180 days after filing suit, so the defendant moved to dismiss under Rule 4(j),[1] which is now Rule 4(m). Id. at 1304. A month after the filing of the motion, the defendant was finally served. Id. The district court granted the motion to dismiss, and the Fifth Circuit Court of Appeals affirmed. Id. at 1307. In considering whether the plaintiffs had established good cause, the Fifth Circuit noted that the plaintiffs did not contend that they were unable to timely serve the defendant or even that they had attempted to do

---

[1] Rule 4(j) provided "[i]f a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot *show good cause why such service was not made within that period,* the action *shall* be dismissed as to that defendant *without prejudice* upon the *court's own initiative with notice to such party or upon motion.*" Winters, 776 F.2d at 1305 (emphasis in original).

3

so. Id. at 1306-07. Instead, plaintiffs argued that they should not be required to incur the costs of service because they had served the defendant with another, identical lawsuit that plaintiffs had filed in state court and which the defendant had removed. Id. The Fifth Circuit rejected this argument and further pointed out that the plaintiffs did not contend that defendant was aware of the lawsuit and the defendant asserted that it had inadvertently stumbled upon it. Id. at 1307. The court of appeals found the plaintiffs had not shown good cause for their failure to timely serve the defendant. Id.

Similarly, in Gartin v. Par Pharm. Companies, Inc., the plaintiffs had not served the defendant until 90 days after the time period required by Rule 4(m). 289 F. App'x 688, 693 (5th Cir. 2008). The plaintiffs argued that confusing corporate nomenclature, uncooperative defense counsel, and plaintiffs' proper service on defendant's parent corporation established good cause for failure to timely serve the defendant. Id. The Fifth Circuit found such mistakes of counsel and ignorance of the rules were insufficient to establish good cause. Id.

"[E]even if good cause is lacking, the court has discretionary power to extend time for service." Newby v. Enron Corp., 284 F. App'x 146, 149 (5th Cir. 2008). The Fifth Circuit has explained that "[s]uch relief may be warranted, 'for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.'" Id. (quoting Fed. R. Civ. Proc. 4(m) advisory committee's note to 1993 amendment). Although recognizing the principle in Newby, the Fifth Circuit in that case rejected plaintiffs' argument that good cause was established solely by the fact that their action would be time barred if they were required to re-file. Id. In affirming the district court's dismissal, the court of appeals noted that the plaintiffs had not demonstrated a good faith effort to attempt service or proffered a reasonable basis for failing to serve the defendants within the required time period. Id. at 149-50.

4

Where a plaintiff will be time barred from re-filing her claim upon dismissal, courts sometimes require that "(1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile." Id. For example, the plaintiffs in Gartin also argued that even if they had not established good cause, the district court abused its discretion by not extending the time for service because the statute of limitations would bar them from re-filing suit. Id. Although the court of appeals did not decide whether the heightened standard for a with-prejudice dismissal for failure to prosecute applies before a lawsuit can be dismissed under Rule 4(m) if the plaintiff would be time-barred from refiling, it found that the plaintiffs would not have satisfied that standard. Id. The court of appeals found a clear record of delay by plaintiffs' failure to serve the defendant for seven months after filing suit. Id. at 694. Further, the court of appeals determined that the district court's failure to issue a lesser sanction was not fatal, noting that "a 'delay between filing and service ordinarily is to be viewed more seriously than a delay of a like period of time occurring after service of process.'" Id. (quoting Veazey v. Young's Yacht Sale & Serv., Inc., 644 F.2d 475, 478 (5th Cir. 1981)). The court of appeals added that the plaintiffs had engaged in a clear pattern of delay and that the district court had issued a notice of impending dismissal inviting a request for extension, but plaintiffs had not requested an extension, indicating that lesser sanctions would not have been effective. Id. Finally, the court of appeals found the existence of at least one aggravating factor because plaintiffs had waited until one day before the expiration of the statute of limitations before filing suit, and then waited seven months to serve the defendant seeking Rule

4(m) dismissal. Id. "Permitting an extension after such a delay is prejudicial by its very nature." Id. The court of appeals explained,

> "To permit a delay in service when the complaint is served immediately prior to the running of the statute of limitations undercuts the purposes served by the statute. Once the statute has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims." Rule 4(m) must have some teeth if it is to avoid becoming a last ditch, federal tolling mechanism for dilatory state tort claimants.

Id. at 694-95 (quoting Veazy, 644 F.2d at 478). The court noted it was a "close case," but added that "close cases do not prevent discretionary dismissal." Id. at 695.

Defendants here point out that courts in this district have dismissed employment discrimination suits where plaintiff would be barred from re-filing suit. For example, in Neal v. Louisiana Department of Public Safety & Corrections, the *pro se* plaintiff filed a Title VII employment discrimination claim but failed to serve the defendant. No. CIV.A. 14-2805, 2015 WL 5061114, at *1 (E.D. La. Aug. 25, 2015). Even after the defendant's motion to dismiss was filed and the motion had been reset to allow plaintiff's counsel to file an opposition, the plaintiff had not properly served the defendant nor opposed the motion to dismiss. Id. at *2. The court dismissed the action with prejudice. Id.

Defendants also point to Able Security & Patrol, LLC v. Louisiana ex rel. Department of Public Safety & Corrections, where the district court dismissed the plaintiff's claim under Rule 4(m) even though the plaintiff would be time-barred from re-filing. No. CIV.A. 07-1931, 2008 WL 3539693, at *4 (E.D. La. July 30, 2008). The court noted that "the fact that dismissal without prejudice would result in the action being time-barred as to the defendant dismissed is irrelevant to the district court's consideration of whether dismissal is proper under Rule 4(m)." Id. The plaintiff had not even addressed "good cause," arguing instead that service, while technically

6

deficient, should be deemed complete because the defendants had actual notice of the suit and would not suffer prejudice. Id. at *2. Of note, the court rejected plaintiff's argument that sending a request for waiver of service by certified mail could satisfy plaintiff's requirement to serve the defendant. Id. at *3.

Citing only cases from outside of this circuit,[2] Plaintiff here submits that courts have found that difficulty in obtaining information about defendants can be held as good cause. For example, in Elkins v. Broome, the *pro se* plaintiff requested and received an extension of time to effect service of process almost two months after the time for service had passed and then believed he had properly served the defendant within the extension granted. 213 F.R.D. 273, 276 (M.D.N.C. 2003). Although service had not been proper, the Middle District of North Carolina found good cause to grant another extension of time because, after the initial extension was granted, the plaintiff had hired a professional process server who had made multiple attempts to serve the defendant police offer at the police department and ultimately delivered a copy of the complaint to the duty officer. Id. The court noted that defendant's position in law enforcement made personal service difficult. Id.

---

[2] The other two cases cited by Plaintiff for this proposition bear little resemblance to the facts before the court here. For example, in Clemons v. Soeltner, the Sixth Circuit Court of Appeals reversed the district court's dismissal of a prisoner's §1983 complaint for failure to serve where the incarcerated plaintiff had demonstrated diligence in attempting to serve the former prison guard by, among other things, twice moving for and obtaining orders compelling the attorney general to provide the address of the defendant and where the attorney general had not complied with the orders. 62 F. App'x 81, 83 (6th Cir. 2003). Similarly, in Del Raine v. Carlson, the Seventh Circuit Court of Appeals held that the magistrate judge should have granted the incarcerated plaintiff an extension of time to serve his §1983 complaint. Nos. 94-2595, 94-3101, 77 F.3d 484, 1996 WL 47451, at *14 (7th Cir. 1996) (unpublished). Numerous factors were at play. Plaintiff had properly served the Director of the Bureau of Prisons (who had attempted to evade service) and had mailed him interrogatories seeking the addresses of the other defendants. Id. at *7. Plaintiff's counsel withdrew and new counsel sent new interrogatories, but the addresses were not provided until seven months later. Id. Four days later the plaintiff's attorney moved for an extension of time to complete service. Id. The court of appeals considered that defendants had participated in the suit for years without complaining about lack of service. Id. at *9. The court also considered that the United States Attorney had been representing the defendants in their official capacities since service on the U.S. Attorney's office had been completed when the case was originally filed. Id. at *10. The court found no prejudice to the defendants. Id. at *12. The court of appeals added that "[r]equiring an indigent, incarcerated plaintiff to hire private process servers throughout the country to track down these defendants is senseless." Id. at *14.

Plaintiff here also cites Riverdale Mills Corp. v. U.S. Dep't of Transp., where the District of Massachusetts granted plaintiff an extension, even though it found that plaintiff's ignorance of procedural rules did not establish good cause for plaintiff's failure to serve the Federal Aviation Administration ("FAA"). 225 F.R.D. 393, 395 (D. Mass. 2005). In so holding, the court found that the FAA had received actual notice of the lawsuit through plaintiff's flawed attempt at service on the FAA's docket clerk and because the action was a continuation of the parties' ongoing dispute. Id. Further the court found the FAA would not be prejudiced by the extension because it had long had notice of the dispute. Id.

Plaintiff here further cites In re Teligent Servs., Inc., where a bankruptcy court in the Southern District of New York explained that in exercising their discretion to allow an extension of time to serve where the plaintiff fails to show good cause, courts consider:

> 1) whether the statute of limitations would bar a re-filed action, 2) whether the defendant attempted to conceal the defect in service, 3) whether the defendant would be prejudiced by excusing the plaintiff from the time constraints of the provision, and 4) whether the defendant had actual notice of the claims asserted in the complaint.

324 B.R. 467, 473 (Bankr. S.D.N.Y. 2005), aff'd, 372 B.R. 594 (S.D.N.Y. 2007) (quoting Feingold v. Hankin, 269 F. Supp. 2d 268, 277 (S.D.N.Y. 2003)). The court in Teligent noted that courts give particular weight to whether the statute of limitations has run and whether the defendant would be prejudiced. Id. But, as the Fifth Circuit in Newby also noted, the fact that the statute of limitations has run does not require that an extension be granted. Id. Although the plaintiff would be barred from re-filing its claim, the court in Teligent granted the Rule 4(m) motion to dismiss, concluding that rather than correcting "a known possible mistake, Plaintiff continued to pursue the wrong party for more than a year, failed to provide the right party, whose identity Plaintiff had reason to

8

suspect, with actual notice of the Complaint and prejudiced that party in its ability to defend itself and prove facts as to which it bears the burden of proof." Id. at 476.

*2. Parties' Arguments*

Defendants argue that dismissal is warranted here. They point out that Ms. Bounds' motion for extension was filed two months and two missed docket call appearances after the 90-day period provided by Rule 4(m) had lapsed. The motion asserted an illness in late September 2018 and asserted that Ms. Bounds' counsel had emailed and communicated with Textron in an attempt to obtain a waiver of service. But, defendants submit, Textron has not been able to verify Ms. Knight's representations as to her attempts to notify Textron of the lawsuit and request waiver of service. They have no record of receiving any communication or request for waiver of service from Ms. Knight. Textron explains that in March 2018, Ms. Knight was in communication with Sarah Brown, a member of Textron's in-house counsel team, after Textron transferred Ms. Bounds to a different shift. In conjunction with the present motion, Ms. Brown has signed a declaration asserting that she and Ms. Knight never discussed plans to file or serve a lawsuit or a request for waiver of service of process. Ms. Brown's last day of work was March 29, 2018. Textron notes that her email was set up to send an automatic reply providing contact information for another employee at Textron. Textron adds that no other Textron attorney or employee has any recollection nor record of ever speaking with Ms. Knight regarding a waiver of service.[3] Nor does Ms. Bounds' counsel mention receiving the automatic reply set on Ms. Brown's email account on April 6, 2018 or attempting to contact the alternative person designated in the auto reply.

---

[3] Textron attaches the Declaration of Megan Lyons, the principal paralegal for Textron, who attests that she spoke to Melisse Ader-Duncan, Senior Associate General Counsel for Textron, Beamer Aston, Senior HR Business Partner, and Katherine Lishman, Senior HR Business Partner, who all confirmed that they had not received a request for waiver of service from Ms. Knight. (Rec. Doc. 28-4).

9

Further, Textron points out that even if Ms. Knight had requested a waiver as she asserted in her motion for extension, she did not follow up with Ms. Brown or any other Textron employee. Defendants assert that they "have now been effectively held hostage for nearly seven months . . . wondering when and if they would have to defend against Ms. Bounds's baseless claim." They argue that under the heightened "failure to prosecute" standard, dismissal is warranted because Ms. Bounds has demonstrated a clear pattern of delay and neglect. They add that Ms. Knight's lack of candor regarding the reason for the delay constitutes an aggravating factor.

Ms. Bounds argues that her lawsuit should not be dismissed. Her counsel explains that her failure to appear in court two times for this court's call docket is because she mistakenly believed her paralegal was receiving copies of the court's notices and entering the dates on her calendar. She says she did not realize that her paralegal was not signed up for emails until September 25, 2018, the night before the second docket call when she was ill with the flu.

As to her efforts to serve the Defendants, she explains that in March 2018, she emailed Textron's human resources department because Ms. Bounds was complaining of continued harassment. She points out that the email notified the human resources department that a Right to Sue Notice had been received. The March 23, 2018, email to Ms. Brown that Ms. Bounds has attached to her opposition memorandum references the right to sue notice but does not state that Ms. Bounds intended to file suit, nor does it request a waiver. The March 28 and March 29, 2018, emails sent to Ms. Brown concern only the shift change, alleged harassment Ms. Bounds was experiencing, and alleged safety concerns of Ms. Bounds. Ms. Knight has filed an affidavit asserting that she called Textron at the end of April 2018 and informed the person answering that she was calling about Ms. Bounds and that she had previously spoken about the matter with Textron's staff attorney, Ms. Brown. Ms. Knight said she was directed to another female employee,

10

who Ms. Knight believed to be another staff attorney. Ms. Knight asserts that this employee agreed to waive service. Ms. Knight asserts that she mailed a copy of the lawsuit and the request for waiver to Textron on May 24, 2017, using the same human resources department address to which she had previously sent correspondence regarding Ms. Bounds. A copy of that letter is attached to the affidavit, reflecting an address at 19401 Chef Menteur Hwy, to the attention of "Human Resources and Staff Counsel," and addressed to "Transport personnel." In her affidavit, Ms. Knight adds that she was not informed that Ms. Brown would be leaving Textron, and in the memorandum, she argues that she "believes someone else took the call to evade notice and service in human resources." Ms. Knight also explains that she hired a private investigator to locate Mr. Scott in July 2018, but that Mr. Scott could not be found because his address was a used car lot. The same private investigator located Mr. Scott in October 2018 using information from a recent car sale.

Ms. Bounds argues that good cause exists here because Textron has attempted to evade her attempt to obtain a waiver. Ms. Bounds notes that she has been terminated from her employment, and she argues that she cannot afford any costs of this suit. She urges this court to consider the four-factor test and allow an extension even if good cause does not exist. She points out that she would be time-barred from re-filing this action if it was now dismissed, and she insists that defendants are not prejudiced by the delay because they were given notice by letter about all the events in this lawsuit by plaintiff's former counsel William Schieffer who requested defendants preserve evidence. She adds that defendants were put on notice of Ms. Bounds' claims when their human resources officer was emailed about her complaints.

In reply, Textron responds that Ms. Knight fails to identify the female employee with whom she purportedly discussed a waiver of service. Textron says that the purported May 24,

2018, letter would have been redirected to human resources employee Beamer Aston, but he never received the letter. In his declaration, Mr. Aston adds that any telephone call to Textron human resources regarding Ms. Bounds would have been directed to him.

3. *Analysis*

There is no dispute here that Ms. Bounds failed to timely serve the defendants. As discussed above, good cause for an extension of time to do so typically requires more than inadvertence, mistake of counsel, or ignorance of the rules. At best, however, that is what the record here shows. Ms. Bounds' attorney seemed to believe that sending a letter on May 24, 2018, was sufficient to meet her obligation to complete service on Textron by July 25, 2018. As noted by the court in Able Security, a request for a waiver of service does not amount to service of process. 2008 WL 3539693, at *2. Critically, it appears that Ms. Bounds did nothing more to serve Textron until two months after the deadline had expired, and after being ordered twice by this court to complete service or to appear and explain why the lawsuit should not be dismissed for failure to serve. It was not until September 26, 2018, that she requested an extension of time and hired a process server to serve Textron. In requesting that extension, Ms. Bounds represented that she had been attempting to obtain a waiver from Textron for the preceding 60 days. Such efforts, had they occurred, would be too late because 60 days prior to September 26 is July 28. Ms. Bounds' deadline to effect service was July 25, 2018. Thus, by her own admission, Ms. Bounds' efforts to obtain a waiver began after her deadline ran. In addition, however, it now appears that this representation regarding her attempts at service was inaccurate because there is no evidence that any attempts to obtain a waiver were made between July 28 and September 26.

As to Mr. Scott, it appears that Ms. Bounds' first attempt at service was not until July 2018. But when that attempt was unsuccessful, she again did nothing more until the end of September,

despite the court's orders. Of note, although Ms. Bounds' counsel explains her failure to appear as ordered resulted from a mistaken belief that her paralegal was calendaring the dates (an excuse that would not typically be sufficient to establish good cause), Ms. Bounds does not assert that she did not receive the orders themselves. Despite receiving explicit notice from the court that the time period for serving had passed and that the lawsuit risked dismissal, she did not undertake any steps to effect service. On these facts, the court simply cannot find good cause.

Moreover, on these facts, the court cannot exercise its discretion to grant an extension. Although Ms. Bounds will be barred from re-filing her claim, as the cases cited by both sides make clear, that alone is not enough to justify an extension of time. Ms. Bounds' failure to make any serious attempt at service even after two warnings by this court demonstrates a clear pattern of delay. Her failure to act when ordered by the court to do so indicates that lesser sanctions would not have prompted diligent prosecution. And when she finally did appear to address the defects in service, counsel said she had been attempting to obtain a waiver of service for 60 days after emailing and communicating with Textron. But in fact, she later represented that her only attempts to obtain a waiver were four months earlier when she claims she made a phone call to an unnamed employee with Textron and claims she sent a letter with the request for waiver of service. Ms. Bounds' failure to be forthcoming about her attempts at service is an aggravating factor. Although Textron and Mr. Scott do not point to prejudice in the form of lost evidence, as the Fifth Circuit noted in <u>Gartin</u> where service was not completed until seven months after filing, "[p]ermitting an extension after such a delay is prejudicial by its very nature." 644 F.2d at 694. Similarly, here Ms. Bounds did not complete service until between six and seven months after filing suit. "Rule 4(m) must have some teeth if it is to avoid becoming a last ditch, federal tolling mechanism for dilatory" claimants. <u>Id.</u> at 695.

Ms. Bounds has pointed to no cases in this circuit where similar circumstances were held insufficient to dismiss under Rule 4(m). And given Ms. Bounds' failure to make efforts at service within the 30 days following each order setting this matter for the call docket, and in light of Ms. Bounds' assertion in requesting an extension in September that she had been engaged in efforts to obtain a waiver during the previous 60 days when she had not, the court finds that even the out of circuit cases cited by Ms. Bounds are distinguishable. Further, the court rejects Ms. Bounds' suggestion that the defendants were evading service. As to Textron, that suggestion seems to be pure conjecture. As to Mr. Scott, while there is some indication he may have avoided coming to the gate of his workplace to accept service, without more and given Ms. Bounds' minimal attempts at service until late September 2018, this is not enough to justify her untimeliness. Thus, the court will not exercise its discretion to grant an extension absent good cause in this case.

## Conclusion

For the foregoing reasons, the Motion to Dismiss (Rec. Doc. 28) is GRANTED. Plaintiffs' claims against Textron and Scott are hereby dismissed without prejudice.

New Orleans, Louisiana, this 28th day of December, 2018.

*[signature]*
Janis van Meerveld
United States Magistrate Judge